IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **EDDIE V. MEDINA JIMÉNEZ**,<br><br>    Plaintiff,<br><br>    v.<br><br>**CAROLYN W. COLVIN**,<br>**COMMISSIONER OF SOCIAL**<br>**SECURITY**,<br><br>    Defendant. | Civil No. 13-1411 (BJM) |

**OPINION AND ORDER**

Plaintiff Eddie V. Medina Jiménez ("Medina") filed a complaint seeking judicial review of the decision of the defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), finding that Medina was disabled only after February 13, 2012, under sections 216(i) and 223(d) of the Social Security Act, 42 U.S.C §§ 416(i) and 423(d). Docket No. 1. Medina requests that the judgment be reversed and an order awarding disability benefits be entered for before that date. *Id.* Medina filed a memorandum of law in support of his position. Docket No. 17. The Commissioner answered the complaint (Docket No. 11) and filed a memorandum in support of her decision. (Docket No. 20). This case is before me on consent of the parties. Docket Nos. 4, 5. After careful review of the administrative record and the briefs on file, the Commissioner's decision is **AFFIRMED**.

**STANDARD OF REVIEW**

The court's review is limited to determining whether the Administrative Law Judge ("ALJ") employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying

the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987). Written reports submitted by non-examining physicians who merely reviewed the written medical evidence are not substantial evidence, although these may serve as supplementary evidence for the ALJ to consider in conjunction with the examining physician's reports. *Irizarry-Sánchez v. Comm'r of Soc. Sec.*, 253 F.Supp. 2d 216, 219 (D.P.R. 2003).

The burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act ("Act"). *See Bowen v. Yuckert*, 482 U.S. 137, 146-47, n.5 (1987). A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is disabled. 20 C.F.R. § 404.1520; *see also Bowen*, 482 U.S. at 140-42; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982). In step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he is, the claimant is not disabled and disability benefits are denied. 20 C.F.R. § 404.1520(b). If he is not, the ALJ proceeds to step two, through

which it is determined whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. However, if the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in which it is determined whether the claimant has an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from the work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process calls for a determination of whether the claimant is able to perform other work in the national economy in view of his residual functional capacity ("RFC"), as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

       The claimant has the burden, under steps one through four, of proving that he cannot return to his former employment because of the alleged disability. *Santiago v. Sec'y of Health and Human Servs.*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the Commissioner has the burden, under step five, to prove the existence of other jobs in the national economy that the claimant can perform. *Ortiz v. Sec'y of Health and Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989).

# BACKGROUND

Eddie V. Medina Jiménez was born on February 14, 1962. Transcript ("Tr.") 42. He has a high school education and also attended tractor trailer driving school. Tr. 42-43. He worked as a warehouse worker and factory maintenance worker from 1994 to 2000, had a second factory worker job in 1996, and was a factory truck driver from 2002 to 2009. Tr. 99. He allegedly became unable to work in 2009 due to vertebrae trauma, insomnia, herniated disc, degenerative disc disease, and a heart condition. Tr. 431. He will remain insured through December 31, 2014. Tr. 390.

The Disability Insurance Benefits application at issue here was filed on August 26, 2010. Tr. 366. Medina's application alleges disability beginning on June 26, 2009. Tr. 636. The claim was denied initially on August 23, 2011 and again upon reconsideration on January 30, 2012. Tr. 255-56. Plaintiff requested a hearing before an ALJ on March 12, 2012. Tr. 279-80. On August 16, 2012, plaintiff appeared with counsel and testified before ALJ Emily Statum. Tr. 36-75. The ALJ issued a decision on November 15, 2012, denying disability benefits for the time period prior to February 13, 2012, and only finding plaintiff disabled after that date, when he became an individual approaching advanced age. Tr. 20-30. This age status change occurs on the day before one's fiftieth birthday. Tr. 28. Plaintiff requested review by the Appeals Council (Tr. 8), which denied plaintiff's request for review on April 2, 2013, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Medina appeals this decision. Docket No. 1.

*Medina's Physical Impairment Medical History*

On August 17, 2004, Medina had an MRI done which revealed a posterior central disc herniation with a ventral thecal sac deformity, borderline acquired central stenosis, mild bilateral foraminal encroachment. Tr. 506. It also revealed degenerative disc disease with bulging annulus and bilateral foraminal narrowing. Tr. 507.

On October 6, 2006, Medina visited the hospital at the Raritan Bay Medical Center in New Jersey for chest pain. Hospital tests, including an electrocardiogram, resulted in a diagnosis of non-ischemic dilated cardiomyopathy and a reduced left ventricle function. Tr. 133-62.

Dr. Francky Merlin consultatively examined Medina on January 19, 2007 at the request of Social Security in connection with a prior application for disability benefits. Tr. 590-92. Medina reported that he was diagnosed with high blood pressure in 2006 and had chest pain in the past. Tr. 590. Merlin found Medina alert and oriented, with normal behavior and gait. Tr. 591. Medina was diagnosed with hypertension and chest pain, and Merlin recommended follow-up with an internist and suggested follow-up with a cardiologist. *Id.* Regarding his ability to do work related activities, Merlin reported that Medina could sit, stand, walk, handle objects, hear, speak, and travel. Tr. 592.

On March 2, 2007, Dr. Napthali Britman completed a physical RFC assessment. Tr. 620. Medina could frequently lift ten pounds, stand or walk for only two hours in an eight-hour day, and sit for about six hours in an eight-hour day. Tr. 621. He had to avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, and dusts because they are aggravating factors for heart disease. Tr. 624.

Medina visited the Raritan Bay Medical Center again on December 2, 2009 due to chest pain, but an x-ray produced normal results. Tr. 164.

Medina was evaluated by consultative examiner Dr. Fernando Torres Santiago on November 24, 2010, for the Disability Determination Program. Tr. 636. Medina reported anxiety, sleeping problems, and the use of anxiolytics, anti-depressives, and sleeping medication. *Id.* He had "occasional non-traumatic backaches." Tr. 637. Torres diagnosed cardiomyopathy, costochondritis, L5-S1 degenerative disc disease, anxiety, and depression. Tr. 639. He commented that Medina "is unable to do regular work." *Id.* Torres noted Medina's oppressive chest pain, striking several times a day and radiating to the upper back

and shoulders. Tr. 640. Medina's hand function and gait were both normal and he did not require the use of any assistive device in standing or walking. Tr. 641-42.

On June 20, 2011, Dr. Jimmy Rosado Valentin, Medina's treating physician for his cardiac condition, completed a physical RFC assessment. Tr. 206-10. He found that Medina suffered from major depression, high blood pressure, discogenic disease, angina, heart ischemia, an enlarged left ventricle, insomnia, panic attacks, fatigue, chest pain, and back pain. Tr. 206. These conditions reportedly caused him moderately severe pain. *Id.* Medina had an abnormal gait, muscle spasms, impaired appetite, gastritis, and weight change. Tr. 207. He could walk for one city block without rest or severe pain, would need a cane or other device for even occasional standing or walking, and could stand or walk for less than two hours in an eight-hour work day. Tr. 207-08. He had to walk every fifteen minutes for ten minutes, and would need a job that permits shifting positions at will from sitting, standing, or walking. Tr. 208. He could sit or stand for fifteen minutes at a time, and sit for less than two hours in an eight-hour work day. *Id.* Medina could rarely lift less than ten pounds, and could rarely twist, stoop, crouch, climb ladders, or climb stairs. Tr. 209. He would likely be absent from work more than four days per month. *Id.*[1]

Two months later, on August 10, 2011, state agency psychologist Dr. Jesus Soto Espinosa reviewed Medina's file. Tr. 238-54. He made a physical RFC assessment, reporting that Medina could occasionally lift or carry twenty pounds and frequently lift or carry ten pounds. Tr. 249. Medina could sit, stand, or walk for about six hours in an eight-hour work day. *Id.* Soto concluded that Medina could not perform his past jobs due to current limitations, but could do light work such as operating a folding machine, operating a collator, or being a "checker." Tr. 252-53. Soto concluded that Medina was not disabled. Tr. 253.

---

[1] Dr. Rosado's severe limitations on sitting, standing, walking, and lifting were found by the ALJ to have little to no support in treatment notes or in other parts of the record. Tr. 27.

*Medina's Mental Impairment Medical History*

On January 20, 2007, Dr. Pradip Gupta, a consultative examiner, performed a psychiatric evaluation of Medina. Tr. 598. Medina was referred by the State of New Jersey Department of Labor, Division of Disability Determination Services. *Id.* Gupta's evaluation reported normal conversation, average intelligence, fair reasoning, and a memory immediate recall of three out of three, two out of three in three minutes, and one out of three in five minutes. Tr. 599. He also noted that Medina's wife handles all his money matters. Tr. 600. He ultimately diagnosed generalized anxiety disorder, panic attacks, and agoraphobia. Tr. 599.

On February 6, 2007, medical consultant Robert Eckardt reviewed Medina's medical records and completed a mental RFC assessment (Tr. 602) that reported anxiety, persistent fear, and recurrent severe panic attacks at least once a week. Tr. 607. He was described as having generalized anxiety disorder. *Id.* The evaluation reported moderate limitation in activities of daily living; moderate limitation in maintaining concentration, persistence, or pace; mild limitation in maintaining social functioning; and one or two episodes of decompensation, each of extended duration. Tr. 612. The RFC also reported a moderately limited ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule while maintaining regular attendance and punctuality, and complete a normal work day and work week without frequent, long breaks. Tr. 616.

There is no medical history on Medina's mental health between early 2007 to late 2010.

On December 14, 2010, Dr. Ruiz performed a mental RFC assessment (along with a physical RFC assessment on the same date) and reported "sustained concentration and persistence limitations." Tr. 250. Medina had a moderately limited ability to carry out detailed instructions, complete a normal work day and work week without interruptions

from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. *Id*.

On January 26, 2011, Medina began outpatient psychiatric treatment at the Rovico Clinic. Tr. 200. In his initial evaluation, he reported previous psychiatric pharmaceutical treatment in New Jersey, as well as various symptoms including poor sleep, restlessness, anxiety, irritability, low appetite, and weight loss. Tr. 201. He was coherent and oriented, though depressed and irritable. *Id*. At another appointment at the clinic on March 23, 2011, he was reportedly cooperative, with good attention, concentration, insight, and judgment, but slow speech. Tr. 198. Medina had several follow-up psychiatric appointments at the APS Clinics of Puerto Rico in November 2011, February 2012, and May 2012. Tr. 232-37. They described his condition as "improving," and said Medina was responding adequately to his medication. *Id.* They found him alert, with logical, coherent, relevant, and oriented thoughts. Tr. 226.

On May 18, 2011, Dr. Rosado evaluated Medina and made a physical RFC assessment that also included mental RFC information. Tr. 207-10. Rosado noted that Medina's pain and other symptoms constantly interfered with his attention and concentration throughout the day. Tr. 207. He reportedly suffered from depression, somatoform disorder, anxiety, personality disorder, and panic disorder. *Id.*

On August 1, 2011, consultative psychiatrist Dr. Alberto Rodriguez Robles examined Medina for approximately 45 minutes. Tr. 213-17, 73. Medina described his history of depression, concentration problems, anhedonia, insomnia, fatigue, and panic attacks since 2004. Tr. 213. He stated that he had been receiving psychiatric treatment through the State Health Insurance Plan. *Id.* He had a history of psychiatric hospitalizations in New Jersey and in the Rovico Clinic in Puerto Rico. Tr. 214. His thought process was reported as slow, logical, coherent, and relevant. Tr. 215. He had poor attention and concentration, being easily distracted and lacking the ability to follow the sequence of

months backwards. *Id.* He was not able to manage his own money. *Id.* He had an adequate remote, past, recent, and immediate memory. *Id.*

A few days later, on August 10, 2011, Dr. Soto reviewed Medina's file and reported on his mental RFC. Tr. 250-51. Soto reported sustained concentration and persistence limitations, with a moderately limited ability to carry out detailed instructions or complete a normal work day and work week without frequent and long breaks. Tr. 250. Soto noted that although there were reported concentration problems, there were also several observations, including those by Dr. Torres, which describe Medina as alert, oriented to person, place, and time, and having a normal memory recall. Tr. 251. Soto's assessment reported that Medina had adequate memory recall and cognitive processing capabilities. *Id*. He cited several pieces of evidence contrary to a serious attention and concentration problem, including consistent reports that Medina was alert, coherent, oriented, thinking logically, and showing adequate stress tolerance, impulse control, simple understanding, and follow-up on verbal commands. *Id.* Soto concluded that Medina could maintain attention and concentration for two-hour periods without undue interruptions. *Id.*

On April 30, 2012, Medina's treating physician for his cardiac condition, Dr. Rosado, diagnosed high blood pressure and major depression. Tr. 231. He also noted Medina's recurrent panic disorder from January 30, 2011. *Id.* The rest of his notes are illegible.

*ALJ's Decision & Vocational Expert Testimony*

In its November 15, 2012 decision, the ALJ found that between June 26, 2009, and February 13, 2012, Medina had a "residual functional capacity to perform sedentary work requiring lifting or carrying ten pounds occasionally and frequently, standing or walking two hours in a period of six hours, sitting six hours in an eight-hour work period, with the need to avoid a concentrated exposure to environments with the extremes of heat or cold, humidity, gases, dusts, odors, or poor ventilation and with an ability for unskilled work

requiring occasional contact with co-workers and the public." Tr. 24-25. The ALJ found that Medina's RFC changed on February 13, 2012, the day before his fiftieth birthday, as he became an individual approaching advanced age on that day. Tr. 28. Based on this RFC finding, the ALJ determined that Medina was not disabled prior to February 13, 2012, as there still existed jobs in significant numbers in the national economy that the claimant could have performed. Tr. 29.

The ALJ's determination was based in part on the testimony of vocational expert ("VE") Pedro Roman at the SSA hearing held on August 16, 2012. Tr. 36. At the hearing, the ALJ posed two hypothetical questions to the VE. The ALJ first told the VE to assume an individual with Medina's work experience and education, between 47 and 49 years old, with the following abilities and limitations: (1) can perform sedentary[2] jobs that require lifting or carrying ten pounds occasionally and frequently; (2) can stand or walk two hours in a six-hour period; (3) can sit for six hours in an eight-hour period; (4) has to avoid concentrated exposure to extreme heat or cold, humidity, wetness, gases, dust, odors, and poor ventilation; (5) can understand, remember, and carry out simple instructions; (6) can adapt to changes or supervision. The VE testified that a person with those characteristics could not perform Medina's past work, but could work as a finisher, telemarketer, or telephone quotation clerk. Tr. 66-68.

The ALJ's second hypothetical was identical to the first except that the person had the ability to work in an unskilled[3] occupation requiring occasional contact with coworkers

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[3] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. . . . A person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a).

and the public.[4] Tr. 68-69. The VE testified that a person with those characteristics could not perform Medina's past work. Tr. 69. Such a person could, however, work as a production worker or lampshade assembler. Tr. 69-70. The person could work as a finisher, as noted in the first hypothetical, but any "diminished capacity," or a loss of pace or concentration, could result in more than occasional contact with coworkers and the public (Tr. 69-71), as Medina had been limited to in the ALJ's decision. The VE then went on to conclude, however, that based on the specific limitations provided in the ALJ's hypotheticals, Medina would have been able to do those jobs. Tr. 71.

Medina's attorney then posed a hypothetical question to the VE, amending the ALJ's second hypothetical to specify that the person could only maintain attention and concentration for approximately 45 minutes.[5] Tr. 73. The attorney asked if such a person could then perform the jobs of finisher and lampshade assembler, and the VE responded that the person could not. *Id.*

The VE had 24 years of experience as a vocational expert, with knowledge of the rules and regulations of Social Security. Tr. 74.

## DISCUSSION

This court must determine whether there is substantial evidence to support the ALJ's determination. The ALJ determined at step five in the sequential evaluation process contained in 20 C.F.R. § 404.1520 that based on Medina's age, education, work experience, and RFC, there was work in the national or regional economy that he could perform prior to February 13, 2012, thus rendering him not disabled before that date within the meaning of the Act.

---

[4] I note that the hypothetical question described sedentary work as lifting twenty pounds, while the true definition limits a worker to lifting only ten pounds. This detail does not appear to have changed the VE's responses, and the parties did not bring it up in their briefs.

[5] This time frame was based on the length of the appointment during which Medina showed signs of poor attention and concentration. Tr. 30, 73.

Case 3:13-cv-01411-BJM Document 21 Filed 06/30/14 Page 12 of 17

Medina v. Colvin, Civil No. 13-1411 (BJM)                                                                                           12

Medina argues that the ALJ did not deploy the correct legal standards because the ALJ (1) posed hypotheticals to the VE that did not accurately reflect all of his limitations before February 13, 2012, (2) gave limited weight to opinions that were "necessary" to interpret medical information, (3) failed to consider Dr. Torres's statement that Medina could not do "regular work," and (4) cited Dr. Merlin with great weight, even though he examined Medina in 2007, before symptoms allegedly worsened. Docket No. 17. The Commissioner argues that there is substantial evidence in the record to support her decision that Medina is not entitled to disability benefits for the time period in question. Docket No. 20. She requests that her decision be affirmed. *Id.*

The function of weighing evidence and determining if a person meets the statutory definition of disability is the Commissioner's. 20 C.F.R. § 404.1527(d). It is the Commissioner's responsibility to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts in the evidence. *See Ortiz*, 955 F.2d at 769, citing *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981); *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987) (citations omitted). Generally, more weight is given to the opinion of a treating source if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). However, it is within the ALJ's discretion to credit the more positive reports of claimant's mental condition. *See* 20 C.F.R. § 404.1527(d)(2)-(5); *Román-Román v. Comm'r of Soc. Sec.*, 114 F. App'x 410, 411-12 (1st Cir. 2004), citing *Rodriguez Pagan*, 819 F.2d at 2-3. The ALJ may reject the conclusions of a treating physician regarding disability where contradictory medical evidence appears in the record. *See Arias v. Comm'r of Social Security*, 70 Fed. Appx. 595, 598 (1st Cir. 2003) (citations omitted).

## I. Hypothetical Questions

In this case, the ALJ used a VE to determine whether substantial gainful activity existed in the national economy that Medina could have performed after the alleged onset of his disability on June 26, 2009 and prior to his advanced age status on February 13, 2012.

The VE's testimony is relevant to the inquiry insofar as the hypothetical questions posed by the ALJ to the VE accurately reflect the claimant's functional work capacity. *See Arocho v. Sec'y of Health and Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982). A proper hypothetical question is one that "incorporate[s] reasonably all disabilities of the claimant recognized by the ALJ." *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). In other words, a VE's testimony must be predicated on a supportable RFC assessment. *See* 20 C.F.R. § 404.1520(g)(1). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1). Therefore, the first question is whether the ALJ properly factored in all of Medina's limitations in the final RFC determination.

Medina argues that the ALJ did not incorporate the poor attention and concentration problems that Dr. Rodriguez reported. Tr. 215. In support, Medina notes that at the hearing the VE mentioned that concentration problems could interfere with his ability to "maintain" the jobs in question. Docket No. 17, at 16-18. Also, Medina notes that his attorney posed a hypothetical question that incorporated Dr. Rodriguez' extreme attention and concentration limitations and the VE answered that a person with such limitations would not be able to perform the jobs he had just listed. *Id.* Thus, Medina argues that had Dr. Rodriguez's findings been incorporated into the hypothetical, he would have been deemed disabled.

The ALJ posed two hypothetical questions to the VE, who then provided examples of jobs the claimant could have done prior to February 13, 2012 with his limitations. Attention and concentration problems were not explicitly described in the two

Medina v. Colvin, Civil No. 13-1411 (BJM)                                                        14

hypotheticals, but the VE addressed the issue when he stated that losing concentration could result in increased contact with coworkers and supervisors, beyond the limited contact Medina required. Tr. 70-71. However, the VE then went on to say that based on the *specific limitations* the ALJ described in the hypotheticals, Medina would have been able to do those jobs before February 13, 2012. Tr. 71. As his comment about concentration was admittedly unrelated to the ALJ's exact hypotheticals, the ALJ correctly did not incorporate it into her conclusion on disability.

This is also consistent with the ALJ's RFC findings, which did not specify such a serious attention and concentration limitation. Dr. Ruiz noted attention problems in 2010 but then went on to say that he still had a "moderately limited" ability to do work tasks and complete a normal work day and week. Tr. 250. The Rovico Clinic, one of Medina's treating sources, found his attention and concentration to be "ok" in March 2011. Tr. 198. The APS Clinic, another treating source, found him alert, with logical, coherent, relevant, and oriented thoughts between November 2011 and May 2012. Tr. 226. Dr. Rodriguez, whose report was given great weight, mentioned attention problems in August 2011, but also noted that he had an adequate memory and logical, coherent, relevant thoughts. Tr. 215. Dr. Soto reported the same thing in August 2011. Dr. Rosado, a treating doctor, reported attention problems but his opinion was given limited weight due to a conclusory report without supporting rationale. Tr. 27. The opinion of a treating physician must be given controlling weight only when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2). When controlling weight is not proper, the Commissioner, or the ALJ as surrogate, must weigh the evidence and resolve conflicts on the record to determine the nature and severity of impairments. *See* 20 C.F.R. § 404.1527(c)(2); *Rodriguez Pagan*, 819 F.2d at 4.

Medina's attorney posed his own hypothetical question to the VE on this issue. However, it was based on an unfounded assumption the attorney made, and not substantial evidence from the record. The attorney attempted to draw a connection between Medina's attention and concentration issues (reported during his 45-minute consultative psychiatric examination by Dr. Rodriguez) and his ability to work. Tr. 73. No doctor explicitly found that Medina could not maintain attention and concentration for more than 45 minutes. Some of his records do not even report an attention and concentration problem, let alone one so extreme. Because this limitation is not supported by the record, it does not merit any weight in the ALJ's decision. Although Dr. Rodriguez's assessment could arguably justify that Medina's mental limitations were more severe than that posed in the ALJ's hypotheticals, there is substantial evidence in the record to conclude otherwise, and the legal standard requires that the court "must affirm the [ALJ's] resolution, even if the record arguably could justify a different conclusion." *Rodriguez Pagan*, 819 F.2d at 3.

## II.   Limited Weight to Medical Opinions

Medina next argues that the ALJ erred in giving limited weight to the opinions of Drs. Soto, Ruiz, Charles E. Ramos, and Ivan Arzola. Docket No. 17, at 19-20. However, his argument is misplaced. To be sure, an ALJ cannot completely ignore expert interpretations of otherwise unintelligible medical data. *See Berrios v. Sec'y of Health & Human Servs.*, 796 F.2d 574, 575-76 (1st Cir. 1986) (vacating and remanding an ALJ opinion that rejected certain doctors' reports, leaving the ALJ without proper interpretations of complex medical data). But that is not what happened here. The ALJ clearly justified the limited weight she gave those doctors' opinions by explaining that they failed to take into account all of Medina's symptoms, as well as the combined effect of his symptoms on his impairments. Tr. 27. VE hypotheticals must incorporate all of the claimant's disabilities, so the ALJ did not err in giving these opinions less weight when formulating an RFC assessment and VE hypotheticals. *See Bowling v. Shalala*, 36 F.3d

431, 436 (5th Cir. 1994). These doctors did not provide necessary interpretations of otherwise indecipherable medical data that were then ignored. They made assessments that did not factor in every symptom Medina reported, with overestimations of his capabilities that in fact may have led the ALJ to not find Medina disabled at all.

### III.   Statement of Dr. Torres

In his 2010 evaluation, Dr. Torres stated that Medina was "unable to do regular work." Tr. 639. Medina argues that this statement should have been given more weight as evidence of disability, but the Commissioner responds that the ALJ rightly did not. Docket No. 20, at 13. A statement by a medical source that a claimant is "disabled" or "unable to work" does not mean that the Commissioner must determine that the claimant is disabled. *See* 20 C.F.R. § 404.1527(d)(1). Such decisions are reserved to the Commissioner, and treating source opinions on such issues are "never entitled to controlling weight or special significance." Social Security Ruling (SSR) 96-5p. As this statement was made by a medical source on an issue reserved to the Commissioner to decide, the ALJ properly gave it little weight.

### IV.   Dr. Merlin's Examination

Finally, Medina argues that Dr. Merlin's consultative examination report from 2007 should not have received significant weight, since it was dated before the alleged onset of disability in 2009. Tr. 20-21. The ALJ justified this weight by explaining that Dr. Merlin provided a comprehensive evaluation, and his findings were supported by objective tests. Tr. 27. Consultative evaluations, while not entitled to controlling weight, must still be taken into consideration and given an appropriate weight in light of other evidence in the record. *See Traynham v. Astrue*, 925 F. Supp. 2d 149, 160 (D. Mass. 2013). Dr. Merlin's report cited Medina's hypertension and chest pain with attached laboratory tests, as several of the other reports did not do. Tr. 590-96. It described his abilities briefly and in general terms, in a way that was still consistent with other ability descriptions. Tr. 592. Despite its earlier

date, it was not contradictory to the record as a whole and was appropriately considered when evaluating the record.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of June, 2014.

                                           *S/ Bruce J. McGiverin*
                                           BRUCE J. MCGIVERIN
                                           United States Magistrate Judge